# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDY KUSHMEDER, | CIVIL ACTION NO. 3:08-CV-1059 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| JOHN M. McHUGH, Secretary of the Army, and DEPARTMENT OF THE ARMY, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss, in part, and for Summary Judgment. (Doc. 24.) For the reasons provided below, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

### I. FACTUAL BACKGROUND

Plaintiff Judy Kushmeder began working as a WG-08 Electronics Worker at Tobyhanna Army Depot ("TYAD") in 1989. (Doc. 35 at ¶ 1.) In 2001, Plaintiff applied for a temporary not-to-exceed 5 year position as an Industrial Engineering Technician ("IE Tech"), pay grade GS-5/7/9; the selecting official for this position was Sharon Smith. (Doc. 35 at ¶¶ 2-3.) Plaintiff was selected for the position and began working as an IE Tech on February 26, 2002; she began as a GS-5. (Doc. 35 at ¶ 5-6.) The first performance review received by Plaintiff was at the "excellent" level, and Plaintiff was promoted to a GS-7 IE Tech position on March 6, 2003. (Doc. 35 at ¶ 13.)

On April 28, 2003, Plaintiff was informed that her position was being cut. Defendants

contend the position was selected for elimination because the Director of Resource Management was told that there would be a cut in the Table of Distribution Allowances, which is the number of employees authorized to work in a given section. (Smith Declaration at ¶ 14.) Kushmeder believes that her position was cut in reaction to comments she had made to an Inspector General, Major Robert Myles, during a meeting they had in mid-April 2003. During this conversation with Myles, Plaintiff intimated that women had trouble getting promotions at TYAD.[1] Smith claims to have no knowledge of Plaintiff's conversation with Myles. (Smith Declaration at ¶ 16.) After her position was cut, Plaintiff continued to work as a GS-7 IE Tech until mid-July 2003.

In May 2005, Smith was the Chief of the Research and Analysis Division in the Directorate of Productivity, Improvement and Innovation ("PII Directorate"); at that time, Smith advertised a position vacancy for an IE Tech, GS 5/7/9. (Doc. 35 at ¶¶ 25-26.) Before the interviews were conducted for this position, Smith created a matrix in which she graded each applicant on their shop experience (scored between one and four, weighted by five), education (four points for a bachelor's degree in engineering, three points for an associate's degree in engineering, and two points for other bachelor's degrees, all weighted by three),[2] and interview score (five questions scored between two and four points, for a total of twenty possible points). (Doc. 31, Ex. I; Smith Declaration ¶¶ 21-27.) The applicants with the highest

---

[1] Plaintiff testified as follows: "And [Myles] said, How long have you been at the Depot? I told him. And he said, Just now? I said, Well, Yeah. I said, you know, I had some problems along the way. And, you know, I just of confided some person thing with him. And I said, I'm not the only female, because he looked surprised. I said, It's not just me. And then, you know, we kind of dropped it then." (Kushmeder Dep. 104:21-105:3.)

[2] Smith also counted the agency's four-year apprenticeship program as being equal to an associate's degree in engineering. (Doc. 35 at ¶ 36.)

scores were Brenda Fiorani (49 points), Dave Marcus (44 points), and Steve Leibig (42 points);[3] Plaintiff finished in a seventh-place tie, with 37 points. (Doc. 34, Ex. 27.)

On July 13, 2005, Brenda Fiorani was selected for the position. (Doc. 37, Ex. Q.) Between the time these interviews were conducted and the time Fiorani was selected, another vacancy opened up for a GS-9 IE Tech.[4] (Doc. 30 at ¶ 47.) On July 22, 2005, Plaintiff met with John Sutkowsky, the Equal Employment Opportunity ("EEO") manager for TYAD, and raised the issue of the job vacancy not yet being filled. (Doc. 34, Ex. 28.) Plaintiff stated that she felt she was being retaliated against for her conversation with Myles and speaking to another Inspector General in 1998; however, she did not file a formal EEO complaint. Furthermore, Plaintiff admitted to having no evidence that Sharon Smith had any knowledge of this meeting with Sutkowsky. (Kushmeder Dep. 230:18-21.)

An e-mail was sent to the unsuccessful candidates on July 25, 2005, telling them that Fiorani had been selected. (Doc. 37, Ex. R.) For the newly opened position, Smith selected Liebig on July 26, 2005.[5] (Doc. 37, Ex. T.) On July 26, 2005, Plaintiff e-mailed Smith and asked why she had not been selected; Smith explained to Plaintiff that could improve her chances for future vacancies by working on larger variety of more complex systems. (Doc. 37, Ex. S.)

---

[3] When Smith first added up the scores, she made an error in the calcuations; however, the error ultimately had no effect on the relative positions of the top five applicants. (Doc. 35, Ex. 27.)

[4] According to Plaintiff, this cannot be true because regulations only allow for five applicants to be interviewed per vacancy and nine were referred for the vacancy that Fiorani ultimately filled. (Doc. 35 at ¶ 47.)

[5] Dave Marcus, the second-highest rated applicant was not selected for this position because he had already received a different GS-5/7/9 position in a different directorate. (Smith Declaration at ¶ 33.)

3

Shortly thereafter, an IE Tech position became available in the Process Engineering Division. Although Smith was the selecting supervisor for this position, she conferred with Dave Dudzinsky, the acting chief of the division, because the selection would eventually be working under Dudzinsky. (Fact Finding Investigation Transcript, 29:11-14, Jan. 26, 2006.) Dudzinsky informed Smith that he would need somebody with technical writing skills and the ability to work well with others; Smith looked at the resumes of the applicants who had previously interviewed and selected April Garrahan, Dave Marcus, and Dan Baswari as the candidates who met Dudzinsky's needs. (FFI Transcript, 30:1-31:3.) These candidates were interviewed on August 5, 2005; Garrahan was selected for the position on August 8, 2005. (Doc. 37, Ex. X.) Dudzinsky and Smith preferred Garrahan because she came across very well in the interview. (FFI Transcript, 32:21-25.) Plaintiff is female and was born in 1952. (Doc. 35 at ¶ 1.) The other pertinent candidates birth dates and genders are as follows: Brenda Fiorani (female born in 1969), Leibig (male born in 1969), and Garrahan (female born in 1976).

## II.    PROCEDURAL HISTORY

On September 1, 2005, Plaintiff filed a formal complaint of discrimination. (Doc. 37, Ex. AA.) On February 6, 2008, Administrative Law Judge Julie Todd ruled in favor of the agency of Defendants on Planitiff's claims of discrimination on the basis of age, sex, and prior EEO activity; this decision was made final on March 17, 2008. (Doc. 37, Exs. BB, CC.)

On May 30, 2008, Plaintiff filed the instant Complaint. (Doc. 1.) Plaintiff brought causes of action alleging that her non-selection for the three positions in question constituted age discrimination in violation of the Age Discrimination in Employment Act (Count I), Gender Discrimination in violation of Title VII (Count II), and retaliation for engaging in protected EEO

4

activity (Count III). On February 22, 2010, Defendants filed the instant motion seeking to dismiss Plaintiff's claims for disparate impact,[6] and seeking summary judgment on all of Plaintiff's remaining claims. This has been fully briefed and is currently ripe for disposition.

## **LEGAL STANDARD**

### I. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the

---

[6] It is unclear where Plaintiff has alleged a claim for disparate impact, but this Court will address it as both parties have discussed it in their briefs.

complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## II.    MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or

nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in

7

the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**I.  ADEA: Disparate Impact**

The disparate impact theory is a viable method of proving discrimination under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). However, the Supreme Court has held that the prima facie case for disparate impact claims under the ADEA was unaffected by the Civil Rights Act of 1991; thus, the prima facie case requirements for the ADEA are still governed by *Ward's Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989).

In order to establish a prima facie case of discrimination in a disparate impact employment discrimination case, "a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 446 (1982). In *Ward's Cove*, the Court expanded on the prima facie case requirements and held that it is not sufficient for a plaintiff to simply allege that there is a disparate impact on employees or a general policy that leads to a disparate impact, but

> that the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged.... [T]he plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.

*Ward's Cove*, 490 U.S. at 656 (quoting *Watson v. Fort Worth Bank Trust*, 487 U.S. 977, 994 (1988)).

8

In this case, Plaintiff has not made any allegation that would make out a prima facie case for disparate impact under the ADEA. She has not alleged any statistical evidence or any other evidence that any of the policies employed by Defendants at TYAD have an adverse effect on workers over forty years of age. Even if she had, she has not pointed to or proven any specific employment practice engaged in by Defendants that has led to a negative impact on the class of older employees. As a result, Plaintiff has not alleged a prima facie case for disparate treatment under the ADEA. Therefore, Defendant's Motion for Dismiss will be granted on this count.

## II. ADEA: Disparate Treatment

The ADEA provides: "It shall be unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a). ADEA plaintiffs may establish a cause of action by demonstrating disparate treatment. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). Moreover, in such instances, proof of discriminatory intent is a crucial component. *Id.* at 300 (citing *Hazen*, 507 U.S. at 610)). ADEA plaintiffs with only indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* In the instant matter, Defendants have conceded in their support brief that Plaintiff has produced sufficient evidence to make out a prima facie case for age discrimination under the ADEA.

### A. Non-Discriminatory Reason

Having met her burden to prove a prima facie case, the burden shifts to Defendants

to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). If, however, Defendant fails to satisfy this minimal burden of production, the Court must deny Defendant's motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

Defendants have met their burden of articulating a non-discriminatory reason for not selecting Plaintiff for the three positions in question. Defendants point to the fact that the candidates selected for the positions were more qualified than Plaintiff for those positions based on the criteria developed by Smith. Smith selected the candidates who scored highest on her interview matrix for the position based on their shop experience, education and their answers to the interview questions. This is a sufficiently non-discriminatory and legitimate reason to survive the low burden placed on Defendants at this stage.

### B. Pretext

To survive a summary judgment motion, Plaintiff must present "some evidence, direct

10

or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendants'] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). If Plaintiff successfully points to evidence sufficient to discredit Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). "[A]n employer would be entitled to judgment as a matter of law ... if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant ... evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

The record contains sufficient evidence from which a reasonable factfinder could disbelieve the reasons articulated by Defendants. Apparently, it was well known around TYAD that upper management was concerned about the aging workforce and sought to promote and hire younger employees. For example, Smith testified that the aging workforce was a concern throughout the Department of Defense. (FFI Transcript, 244:17-25.) Other employees testified that they heard upper management at TYAD mention that the aging workforce was a concern. (Adamo Dep., 126:13-129:8, Aug. 7, 2006.) Still more employees noted that supervisors have stated that TYAD is looking to hire younger people to replace older workers as they near retirement and that they felt that they were passed over for positions due to their age. (Dale Dep. 9:15-11:5, Aug. 3, 2006.) This evidence is enough to allow a reasonable factfinder to disbelieve Defendants' proffered reason, namely that Plaintiff was not qualified, and believe that it was, instead, Plaintiff's age that was the driving force

11

behind her non-selection for the positions in question. As such, Plaintiff's age discrimination claim will survive summary judgment, and Defendants' motion will be denied on this count.

## III. GENDER DISCRIMINATION

In order to make out a prima facie case for gender discrimination, the Plaintiff must prove that 1) she was a member of a protected class, 2) she was qualified for the position, 3) she was not hired for that position, and 4) circumstances that give rise to an inference of unlawful discrimination. *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir. 1995) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In the instant case, Plaintiff cannot make out a prima facie case because she has not alleged circumstances that give rise to an inference of unlawful discrimination. Two of the three positions in question were filled by women, and the selecting supervisor, Smith, was also a woman. Furthermore, Plaintiff testified that she had no evidence that she was being discriminated against by Smith on the basis of gender, and that the only reason she believed that she was being subjected to gender discrimination was she "just believe[s] it's possible." (Kushmeder Dep. 219:5-11.) Without more, Plaintiff cannot make out a prima facie case for gender discrimination and summary judgment will be granted in favor of Defendants on this claim.

## IV. RETALIATION FOR EEO ACTIVITY

In Count III of Plaintiff's Complaint, she alleges that Defendants retaliated against her in violation of Title VII. It is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful

employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).[7] The plaintiff need not be correct that there was discrimination in the workplace, but need only "hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Clark County v. Breeden*, 532 U.S. 268, 271 (2001)). In order to establish a claim for unlawful retaliation, a plaintiff must produce evidence that "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001).

In order to be protected activity, the actions taken by Plaintiff need not have been formal; activities such as making complaints to management or writing critical letters may be protected. *Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 135 (3d Cir. 2006). Although context specific, it is the message conveyed by the conduct, not "the means of conveyance" that determines whether the activity is protected. *Id.*

Plaintiff's conversation with Myles was protected activity. Although informal and fairly broad, the message that Plaintiff was sending through her informal complaint to Myles was that she believed that women were being treated unfairly at TYAD and were not receiving promotions at the same rate as men. There is no reason to believe that she did not hold a reasonable good faith belief that this was true. Plaintiff also engaged in protected EEO

---

[7] The ADEA also contains an anti-retaliation section. 29 U.S.C. § 623(d). However, because the ADEA and Title VII are comparable in most contexts, we focus here on Title VII caselaw. *See, e.g., Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 135 n.4 (3d Cir. 2006).

13

activity in 2005 when she e-mailed John Sutkowsky about a position that she had interviewed for, but had not been selected. (Doc. 34, Ex. 37.) Although this e-mail is also informal, the e-mail states that Plaintiff believed that there were no female employees in that position, thereby implying that there was gender discrimination in that division as well. This too is protected activity.

Finally, after the selection of Fiorani, a mediation was scheduled that included Smith and Kushmeder; an e-mail regarding this mediation was sent out on July 29, 2005. (Doc. 34, Ex. 39.) This e-mail was sent to Smith; although she claims to be unaware of the nature mediation, the fact that it was sent by the EEO manager, Sutkowsky, was scheduled to take place in the EEO Conference Room, and suggested that the parties block off four hours to complete the mediation are enough evidence to show that Smith was aware of the general tenor of the mediation and its relation to a specific EEO complaint by Plaintiff. As such, the informal complaint accompanying this e-mail is protected activity engaged in by Plaintiff as well.

While temporal proximity can create a causal link, the Third Circuit Court of Appeals has held that a five-month gap between alleged EEO activity and the retaliatory action is not, standing alone, sufficient evidence for a reasonable factfinder to infer causality. *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007).

The closest possible EEO activity that occurred before the promotions of Fiorani and Leibig is memorialized in an e-mail between Sutkowsky and Plaintiff that was sent on February 22, 2005. (Doc. 34, Ex. 37.) Even if Smith were aware of this e-mail, it was almost five months before Fiorani was selected for the IE Tech position over Plaintiff, and over five months before the Leibig selection.

14

Standing alone, this would not be sufficient evidence to create a causal link. However, the other evidence submitted by Plaintiff does create a causal connection from which a reasonable juror could infer that the failure to hire Plaintiff was a result of her previous activity. First, Dudzinski testified that he may have heard of Plaintiff complaining about discrimination in other matters. (Doc. 34, Ex. 45.) Furthermore, Plaintiff produced depositions in which supervisors admitting dissuading her from engaging in EEO activity, lest she be labeled a "hot potato" that would make other supervisors "skittish." (Viola Dep., 59:3-60:4, Aug. 3, 2006.) Other employees of TYAD testified that Plaintiff had a reputation as a "troublemaker" for having engaged in previous EEO activity and that Plaintiff faced repercussions with Smith soon after Plaintiff spoke to Myles, such as being given menial tasks. (Peters Dep., 35:6-13, Aug. 7, 2006; DeLong Dep., 26:13-27:13, Oct. 6, 2009.)

As to the Garrahan selection, Plaintiff has certainly produced evidence to suggest a causal link. The e-mail scheduling the mediation was sent on July 29, 2005; the candidates for the third position were interviewed on August 5, 2005 and Garrahan was selected on August 8, 2005. This is certainly sufficient temporal proximity that a reasonable juror could infer causality between the EEO activity that Plaintiff engaged in and the adverse employment activity, namely being passed over for a promotion. As such, Plaintiff has made out a prima facie case.

"If the employee establishes this prima facie case of retaliation, the familiar McDonnell Douglas approach applies" and Defendants must articulate a legitimate, non-discriminatory reason for their actions. *Moore*, 461 F.3d at 342. Defendants have met that burden in this case by stating that the position in question called for technical writing skills that Plaintiff did not possess.

15

The burden then shifts back to Plaintiff to produce evidence from which a factfinder could reasonably disbelieve Defendants' articulated reasons, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the action. *Fuentes*, 32 F.3d at 764. There is sufficient evidence from which a reasonable juror could believe that her non-selection for the positions at issue was in retaliation for the EEO activity engaged in by Plaintiff. As noted above, Plaintiff had a reputation at TYAD for being a "troublemaker" due to her EEO activity. Furthermore, there is testimony that Smith had previously subjected Plaintiff to repercussions for her conversations with Myles. Certainly, a reasonable juror could disbelieve that Smith's refusal to promote Plaintiff might have been retaliation against a "troublemaker" who regularly engaged in protected EEO activity. Therefore, summary judgment will be denied on Count III.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss, in part, and for Summary Judgment will be granted in part and denied in part. An appropriate order follows.

| | |
|---|---|
| May 14, 2010<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDY KUSHMEDER, <br><br> Plaintiff, <br> v. <br> JOHN M. McHUGH, Secretary of the Army, and DEPARTMENT OF THE ARMY, <br><br> Defendants. | CIVIL ACTION NO. 3:08-CV-1059 <br><br> (JUDGE CAPUTO) |

## ORDER

**NOW**, this 14th day of May, 2010, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, in part, and for Summary Judgment (Doc. 29) is **GRANTED in part and DENIED in part** as follows:

    (1)    Defendants' Motion to Dismiss Plaintiff's Disparate Impact claim is **GRANTED**.
    (2)    Defendants' Motion for Summary Judgment is **GRANTED** on Count II
    (3)    Defendants' Motion for Summary Judgment is **DENIED** on Counts I and III.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge